## LA FELL v. STATE.

(Court of Criminal Appeals of Texas. Feb. 5, 1913.)

1. CRIMINAL LAW (§ 792*)—INSTRUCTIONS—PRINCIPALS.

On a trial for horse stealing, where accused was found in possession of the horses about 80 miles from where they were stolen, and claimed to have purchased them from a third person, and there was no direct evidence that he was present when they were stolen, an instruction that if the parties acted together in the commission of the offense, and the act was done in pursuance of a previously formed design, in which all united and concurred, all were guilty as principals if the offense was actually committed during the existence and in the execution of the common design and intent of all, whether all were actually bodily present when the offense was committed or not, was improper, since such an instruction is reversible error in a felony case, especially where the defensive theory is alibi, or where the inculpatory evidence is circumstantial or is such that accused, if guilty at all, would or might be guilty only as an accomplice or accessory.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1818–1820; Dec. Dig. § 792.*]

2. CRIMINAL LAW (§ 792*)—INSTRUCTIONS—PRINCIPALS.

Where the court charges on the theory that accused was a principal, the converse of the proposition that if another committed the offense, and defendant neither aided nor encouraged him and was not present, he would not be a principal, should also be given.

[Ed. Note.—For other cases, see Criminal Law, Cent.Dig. §§ 1818–1820; Dec.Dig. § 792.*]

3. CRIMINAL LAW (§ 351*)—EVIDENCE—SUBSEQUENT CONDUCT OF ACCUSED.

On a trial for horse stealing, where there was evidence that the sheriff followed accused from the place where the horses were stolen to another state, where he was found in possession of such horses, and accused claimed that he had purchased them from a third person, evidence that he voluntarily returned to this state should have been admitted.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 776, 778–785, 920–932; Dec. Dig. § 351.*]

4. CRIMINAL LAW (§ 595*)—CONTINUANCE—MATERIALITY OF EVIDENCE.

On a trial for horse stealing about 11 or 12 miles from A., where accused was found in possession of the horses at T., about 80 miles away, but claimed to have purchased them from a third person, testimony, which it was claimed absent witnesses would have given, that accused was in A. when the horses were stolen, and had no opportunity to go to their pasture, and that, when seen on the road between A. and T., he had no horses in his possession, was material, and hence a continuance should have been granted, where it was the first application and diligence was shown.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1311, 1323–1327; Dec. Dig. § 595.*]

5. GRAND JURY (§ 37*)—EVIDENCE—STATEMENT OF ACCUSED.

Where accused's statement to the grand jury, reduced to writing by the district attorney, and signed by accused, did not show that he was warned before making such statement, or who warned him, the defects therein could not be supplied by a separate statement, signed by the foreman of the grand jury, to the effect that accused was warned by the district attorney, and made the attached statement after such warning.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 78; Dec. Dig. § 37.*]

Appeal from District Court, Brewster County; A. M. Walthall, Judge.

P. E. La Fell was convicted of horse theft, and he appeals. Reversed and remanded.

John T. Hill, of El Paso, for appellant. C. E. Lane, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of horse theft; his punishment being as-

sessed at five years' confinement in the penitentiary.

The case is one of circumstantial evidence. The owner of the alleged stolen animal testified it was a mare, and was in his pasture about 12 miles west of Alpine. The last time he saw the animal was on the 4th of January; that on the 12th he discovered she and three mules had disappeared from his pasture; that later these animals were recovered at or near Carlsbad, in the state of New Mexico. The evidence further shows that appellant and Cleveland were in Alpine, and left there on the 10th of January; that on the 13th they were in Toyah, Reeves county, about 80 miles distant from Alpine. An attorney at Toyah testified that Cleveland and appellant appeared at his office on the morning of the 13th, and requested that he draw up a bill of sale for some horses and mules; that he did so, including nine head; that this bill of sale was signed by a man named White. By this bill of sale the title to the property was transferred to appellant and Cleveland. Among these animals was the mare in question. The sheriff of Brewster county, where Alpine is situated, and from which the mare is claimed to have been taken, followed appellant and Cleveland to, or found them at, Carlsbad, N. M., and recovered the stock and brought them back. A statement in writing, made by appellant, was also introduced, which corroborated the attorney's evidence in regard to the purchase of the animals. So it will be seen, and the record manifests beyond question, that appellant was not shown to have been present at the time and place that the animals were taken. He bought the animals at Toyah some 80 or 90 miles from where they were said to have been taken from the pasture; and the evidence is reasonably sufficient to show that he went in possession of the horses at the time he bought them at Toyah. When arrested or notified of the fact that he was charged with taking the animals, he made the statement that he bought the animals from White. This was introduced by the state. So we have a case purely of circumstantial evidence. The first connection of appellant with the animals, so far as the record is concerned, by any fact, was 80 or 90 miles from where the animals were stolen. The state contends that the evidence was sufficient to warrant the jury in concluding that the animals were stolen in pursuance of a conspiracy between appellant, White, and Cleveland; but that is but one side of the case, even if the facts are sufficient to suggest that question. The facts, as introduced, show that he was in possession, probably at Toyah first. Whether he was in possession before that time or not is a matter purely of conjecture. If he was present at the taking, it can only be reached by inference. No witness so testified.

[1] In this condition of the evidence, the court charged the jury on the law of principals as follows: "When an offense has been actually committed by one or more persons, the true criterion for determining who are principals is, Did the parties act together in the commission of the offense? Was the act done in pursuance of a previously formed design, in which the minds of all united and concurred? If so, then the law is that all are alike guilty, provided the offense was actually committed during the existence and in the execution of the common design and intent of all, whether in point of fact all were actually, bodily present on the ground when the offense was actually committed or not." Exception was taken to this charge, and a special requested instruction asked to the effect that, before defendant could be guilty as a principal and convicted under this indictment, the state must show, beyond a reasonable doubt, that he was connected with the original taking as a principal; and the fact that he may have received the property after it was stolen would not constitute him a principal, unless it was further shown that he was present at the time and place of the taking. The court's charge was wrong; and the court was also in error in refusing the requested instruction. The charge, as quoted above and given by the court, is reversible error in felony cases, especially so where the defensive theory was alibi, as was shown by the statement of the defendant introduced against him on the trial. Such charge is also wrong where the inculpatory evidence is circumstantial and consists of acts occurring either before or after the commission of the offense or both, or where there is evidence that defendant, if guilty at all, would only be guilty, or might be guilty, as an accomplice or accessory, either or both. Dawson v. State, 38 Tex. Cr. R. 50, 41 S. W. 599; Yates v. State, 42 S. W. 296; Bell v. State, 39 Tex. Cr. R. 677, 47 S. W. 1010; Joy v. State, 41 Tex. Cr. R. 49, 51 S. W. 933; Criner v. State, 41 Tex. Cr. R. 291, 53 S. W. 873; Walton v. State, 41 Tex. Cr. R. 454, 55 S. W. 566; Steed v. State, 43 Tex. Cr. R. 570, 67 S. W. 328; McAlister v. State, 45 Tex. Cr. R. 258, 76 S. W. 760, 108 Am. St. Rep. 958; McDonald v. State, 46 Tex. Cr. R. 4, 79 S. W. 542; Barnett v. State, 46 Tex. Cr. R. 459, 80 S. W. 1013; Eddens v. State, 47 Tex. Cr. R. 529, 84 S. W. 828; McCulloh v. State, 71 S. W. 278; Armstead v. State, 48 Tex. Cr. R. 306, 87 S. W. 824; Holmes v. State, 49 Tex. Cr. R. 348, 91 S. W. 588; Fruger v. State, 50 Tex. Cr. R. 622, 99 S. W. 1014; Davis v. State, 55 Tex. Cr. R. 500, 117 S. W. 159; O'Quinn v. State, 55 Tex. Cr. R. 25, 115 S. W. 39; Jones v. State, 57 Tex. Cr. R. 148, 122 S. W. 31; Clark v. State, 60 Tex. Cr. R. 173, 131 S. W. 556. See Branch's Crim. Law, § 682, for many authorities collated.

[2] It is also a rule of law that, where the court charges a conviction on the theory that

the accused was a principal, the converse of the proposition should also be given; that is, that if another did in fact commit the offense; and defendant did not aid and encourage him in the commission and was not present, he would not be a principal. Jackson v. State, 20 Tex. App. 192; McMahon v. State, 46 Tex. Cr. R. 540, 81 S. W. 296; Monroe v. State, 47 Tex. Cr. R. 59, 81 S. W. 726; Wood v. State, 28 Tex. App. 16, 11 S. W. 678; Cecil v. State, 44 Tex. Cr. R. 450, 72 S. W. 197; Goodwin v. State, 58 Tex. Cr. R. 503, 126 S. W. 582.

[3] During the trial of the case, appellant, in connection with his arrest and what occurred at Carlsbad, N. M., proposed and offered to show that he voluntarily returned to Texas from the state of New Mexico. This was refused by the court. We are of the opinion the court was in error in refusing this testimony. The state had introduced evidence that he had gone to New Mexico, and the sheriff had gone there and found him with the horses, and arrested him for it. Under this view of the case, appellant had the legal right to show that he voluntarily returned to Texas, and that inasmuch as the state introduced these facts against him, tending to show he was fleeing the country with the stolen horses, this testimony would tend to explain that he was not guilty of the theft, as he claimed he was not. It would have tended also to aid him in his view of the case that he had bought the animals, and had no occasion to be afraid of the result of his return to Texas. For authorities supporting this proposition, see Branch's Criminal Law, § 350.

[4] When the case was called for trial, appellant filed an application for a continuance. It was his first application. By the testimony of absent witnesses, he proposed to show that he was in Alpine at the time the mare is said to have been stolen, and had no opportunity to go 11 or 12 miles to the pasture and take the mare; and by two other witnesses that they saw him while he was traveling the road from Alpine to Toyah, and that he was not then in possession of the mare, or any of the other alleged stolen animals. Without going into a detailed statement of these matters, we are of opinion the testimony was material. The diligence seems to have been sufficient, and it was his first application. Appellant's theory was that he was not present at the taking of the animals; that his first connection with the animals was at Toyah. The state had a statement from him to that effect, which they introduced. In aid of his theory of it, these witnesses, if they would testify as indicated in the application for continuance, would have shown that they saw him between the two points (Alpine and Toyah) without any of these alleged stolen animals. It is not discussed further, because upon another trial

the witnesses may be present, or, if not present, it will be a second application, and the record may then be presented from an entirely different standpoint.

[5] Another matter is suggested for reversal, viz.: The introduction of appellant's statement before the grand jury. He was under arrest and carried before the grand jury. The statement begins: "My name is P. E. La Fell. I live in Alpine. I came here from Los Angeles, Cal. Have been here about three months. I left Alpine about the 10th day of January in company with Mr. A. S. Cleveland. We left horseback and went across country to Pecos. Did not stop in Pecos, and went to Toyah. I knew George White slightly. Met him first when we went to Toyah, which was on the 13th day of January. I had about $500 when I left Alpine. Did not keep my money in bank. Kept it in my pocket," etc. This covers something like three pages of the record, and does not show anywhere, on the face of his statement, that he was warned, or who warned him, or to whom the statement was made. There is a separate document signed by C. A. Brown, foreman of the grand jury, to the effect that appellant was brought before the grand jury, and was warned by the district attorney, and that appellant made the statement attached to Brown's written statement after being warned, and after he was warned that the district attorney reduced his statement to writing, and at the conclusion of said statement the same was read by him to appellant, and he signed it. Brown signed this statement on the 13th day of February, 1912; but this statement of Brown's is an independent statement and not appellant's. There is nowhere, in the statement made by appellant, any showing that he was warned, or that he made the statement. It is simply a statement written down by the district attorney and signed by appellant. The statement in writing made by Mr. Brown, foreman of the grand jury, was not part of appellant's statement. It is an independent matter, and cannot be used against defendant to supply the defects in the statement made by him. A warning may be properly shown by evidence, when evidence is admissible for that purpose. Exception was taken to all this. These are matters set forth in the bill of exceptions and motion for new trial.

For the errors indicated, the judgment is reversed, and the cause is remanded.